COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Beales and Senior Judge Clements


MAGGIE S. WELCH

                                        MEMORANDUM OPINION[*]

v.      Record No. 2076-12-3      PER CURIAM

                                        MAY 21, 2013

BRISTOL DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
Isaac St. C. Freeman, Judge

(Michael A. Bishop, on brief), for appellant.  Appellant submitting
on brief.

(Edward G. Stout; Curcio Stout & Pomrenke, on brief), for appellee.
Appellee submitting on brief.

(Patricia E. Smith; Bradford & Smith, P.C., on brief), Guardian
*ad litem* for the minor children.  Guardian *ad litem* submitting on
brief.


     Maggie S. Welch (mother) appeals an order terminating her parental rights to B.N.G. and

B.S.G.[1]  Mother argues that the trial court erred by finding that the evidence was sufficient to

terminate her parental rights.  Upon reviewing the record and briefs of the parties, we conclude that

the trial court did not err.  Accordingly, we affirm the decision of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The trial court reserved its decision of the termination of mother's parental rights to
C.L.W., Jr. until a future date.  C.L.W., Jr. is not subject to this appeal.

BACKGROUND[2]

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

In December 2010, mother and her husband, Channing Welch, lived together with five

children.[3] Three children, namely B.N.G., B.S.G., and C.L.W., Jr., were mother's biological

children, and two children were her stepchildren.

Bristol Department of Social Services (the Department) had been involved with mother

and B.N.G. since February 2009. The Department provided intensive home services, day

treatment services, and individual counseling for B.N.G.

The Department was aware that there was a history of domestic violence between mother

and Mr. Welch and had recommended that mother seek counseling, which she refused to do.

Approximately one week prior to December 25, 2010, Mr. Welch left the home.

On December 25, 2010, the Department received a child protective services referral

because mother's three-year-old stepson was rushed to the hospital with suspicious injuries. The

stepson suffered severe head trauma and required immediate surgery.

On December 26, 2010, the Department received another child protective services

referral. This referral concerned mother's four-year-old stepdaughter, who had severe bruising

---

[2] Mother did not timely file the transcript of the May 8, 2012 hearing. See Rule 5A:8. After reviewing the record and opening brief, we conclude that a transcript or written statement of facts is not indispensable to a determination of the issue on appeal because the trial court's letter opinion, the CASA reports, and the foster care plans are sufficient. See Anderson v. Commonwealth, 13 Va. App. 506, 508-09, 413 S.E.2d 75, 76-77 (1992); Turner v. Commonwealth, 2 Va. App. 96, 99-100, 341 S.E.2d 400, 402 (1986).

[3] Channing Welch was the biological father to four out of five of the children. He is not the biological father of mother's oldest child, B.N.G. Mr. Welch's parental rights were terminated to B.S.G., and he did not appeal that decision. B.N.G.'s biological father signed an entrustment agreement with the Department.

to both eyes and other parts of her body. Due to the children's injuries and the questions surrounding those injuries, the Department removed all five children from the home.[4]

Initially, the Department placed B.N.G. in a foster home with B.S.G. and his stepsister. B.N.G. had violent outbursts and destroyed property. He tried to hurt B.S.G. The Department removed B.N.G. and placed him in another foster home. B.N.G.'s violent behaviors continued and escalated to the point that he ran into traffic without concern for his safety. The Department moved B.N.G. to another foster home, and his behaviors continued. He was violent toward his foster parents and threatened to kill their dog. B.N.G. was then hospitalized and transferred to a residential facility for intensive treatment, where he received intensive therapy, supervision, counseling, and educational support at the facility. He started to improve. Since B.N.G. was improving, the Department attempted to place B.N.G. with a relative, but after one week in the relative's home, he went back to the residential facility because he again became violent.

When B.S.G. entered foster care, she had unusual behaviors, including biting, hitting, and scratching herself. She was violent toward the other children in the foster home. B.S.G.'s eating habits also were of concern because she would horde food and would eat until she made herself sick. She experienced anxiety and was referred for evaluation. She was diagnosed with post-traumatic stress disorder, developmental coordination disorder, and anxiety. Since being in foster care, B.S.G. developed a strong bond with her foster parents. The Department investigated family friends as potential placements, but determined that they were not suitable.[5]

While the children were in foster care, mother engaged in illegal drug activity. She was arrested for drug charges, perjury charges, and felony child abuse charges.

---

[4] At the time of the removal, B.N.G. was seven years old and B.S.G. was almost two years old.

[5] One person lived out of state and did not comply with the interstate compact home study. Another unrelated person filed for custody but was determined to not be an appropriate placement.

The Bristol Juvenile and Domestic Relations District Court terminated mother's parental rights to B.N.G., B.S.G., and C.L.W., Jr. Mother appealed to the circuit court, which heard evidence and argument on May 8, 2012. At the time of the trial, mother was convicted of federal crimes and was incarcerated in federal prison, awaiting sentencing.[6] On August 17, 2012, the trial court issued a letter opinion, and on October 19, 2012, it entered a final order terminating mother's parental rights to B.N.G. and B.S.G.[7] This appeal followed.

ANALYSIS

Mother argues that the evidence was insufficient to terminate her parental rights to B.N.G. and B.S.G.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

[6] In its letter opinion, the trial court stated that mother faced a possible mandatory minimum sentence of fifteen years.

[7] In its order, the trial court reserved its decision regarding the termination of mother's parental rights to C.L.W., Jr.

The trial court terminated mother's parental rights pursuant to Code § 16.1-283(C)(1)[8] and (C)(2).[9] The trial court focused on each child and his/her needs. The trial court found that B.N.G. was "a special needs child" and was "receiving care which seems appropriate and which is maximizing his abilities." The trial court found that B.S.G. had "been diagnosed with Post Traumatic Stress Disorder, Developmental Coordination Disorder, anxious moods and is asthmatic" and would possibly need "trauma-based therapy, occupational therapy and physical therapy." The trial court held that B.S.G. needed "a stable environment with constant and loving care." The trial court then examined mother and her inability to care for the children. It noted "the general lack of concern by the mother during a time of constant crisis within the family unit." Furthermore, the trial court was concerned with mother's criminal activity and pending

---

[8] A parent's parental rights may be terminated if:

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(1).

[9] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

sentencing in the federal system. The trial court cited Code § 16.1-283(C)(1) and (C)(2) and concluded, "Regardless of Maggie Welch's present situation with federal authorities, it is the Court's firm opinion that the best interest of the two older children is the termination of residual maternal parental interest."

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The Department removed the children because of the severity of the injuries to mother's stepchildren and questions surrounding those injuries. There was evidence that mother exposed B.N.G. and B.S.G. to domestic violence in the home. Both children had severe behavioral issues when they entered foster care. While the children were in foster care, the Department provided services to mother in order to help her reach the goal of returning the children home. The Department identified numerous goals for reunification, including maintaining appropriate housing, attending parenting classes, participating in individual counseling, attending anger management classes, obtaining and maintaining a job, visiting with her children, and cooperating with the Department. Mother achieved some of the goals, such as completing a parenting assessment and a psychological assessment. She also visited her children until her criminal charges prevented her from doing so.[10]

---

[10] According to mother's opening brief, a condition of her bond was that she had no contact with her children.

However, while the children were in foster care, mother "continued her lifestyle of drugs, dealing drugs, and remaining involved with convicted felons." As of July 31, 2011, mother was incarcerated in a federal facility for perjury charges.[11] She also faced child abuse charges in Bristol and drug charges in Tennessee. The Department stated that it was "highly concerned that Mrs. Welch showed a wanton disregard for the well being of her children by engaging in illegal activity which has ultimately lead [sic] to her incurring more charges." As a result of her criminal activity, mother had no contact with her children. Mother's actions showed that she was unable to remedy the situation that led to the children being placed in foster care. In fact, her situation became worse.

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

Mother is unable to resume her parenting duties. B.N.G. and B.S.G. have special needs, which require stability, consistency, love, and supervision. The children have been in foster care since December 26, 2010.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

---

[11] In her opening brief, mother states that she was held without bail on federal charges as of June 7, 2011. The foster care plan reports that she was incarcerated in a federal facility as of July 31, 2011.

B.N.G. and B.S.G. had significant problems prior to entering foster care. Now, they are doing better and receiving the care that they need. The trial court did not err in concluding that termination of mother's parental rights was in the best interests of B.N.G. and B.S.G.

Based on the record, the trial court did not err in terminating mother's parental rights to B.N.G. and B.S.G.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>